E-FILED
Tuesday, 27 May, 2008  04:10:37 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| MEDICAL CONSULTANTS, LTD., an Illinois corporation, and DR. LESLIE LINDBERG, Plaintiffs, v. IROQUOIS MEMORIAL HOSPITAL, a corporation, STEPHEN O. LEURCK, and ASSOCIATED RADIOLOGISTS OF JOLIET, SC, Defendants. | Case No. 07-2083 |

# REPORT AND RECOMMENDATION

In April 2007, Plaintiffs Medical Consultants, Ltd., and Dr. Leslie Lindberg filed a Complaint (#1) against Defendants Iroquois Memorial Hospital, Stephen Leurck, and Associated Radiologists of Joliet, S.C., alleging violations of the Sherman Act (15 U.S.C. §§ 1, 2) and also alleging tortious interference with business relations. In September 2007, Plaintiffs filed an Amended Complaint (#20) adding additional allegations and an additional defendant, Dr. Mohammed Razvi. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.

In October 2007, Defendants Iroquois Memorial Hospital (hereinafter "IMH") and Stephen Leurck filed a Motion To Dismiss Plaintiffs' Amended Complaint and for Judicial Notice (#21). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendants' Motion To Dismiss Plaintiffs' Amended Complaint and for Judicial Notice **(#21)** be **GRANTED**.

## I. Background

The following background is based on the complaint. Plaintiff Medical Consultants, Ltd., provides radiology services at IMH. Plaintiff Lindberg is a board-certified radiologist. He is the sole shareholder and employee of Medical Consultants, Ltd. Defendant Associated Radiologists of Joliet provides radiology services at IMH. The individual physicians who are employees of Associated Radiologists of Joliet are also staff members at IMH. Defendant

Leurck is the chief executive officer at IMH and acted as agent for IMH in all matters mentioned in the complaint. (#20, ¶ 7.) Defendant Razvi is a hospital trustee. (#20, ¶ 42.)

Plaintiffs allege that the relevant market includes Watseka and the surrounding area, which comprises more than 50,000 people. Plaintiffs allege that Defendants IMH and Associated Radiologists "have combined and conspired among themselves and with others to restrain competition in and to monopolize the practice of radiology within the relevant market." (#20, ¶ 16.)

Count I of the amended complaint alleges conspiracy to boycott in violation of 15 U.S.C. § 1. Count II alleges conspiracy to unreasonably restrain trade in violation of 15 U.S.C. § 1. Count III alleges conspiracy to unlawfully monopolize in violation of 15 U.S.C. § 2. Count IV alleges a conspiracy to tortiously interfere with business relations.

## II. Standard

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the Court treats all well-pleaded allegations in the complaint as true, and grants all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S. Ct. 1955, 1965 (2007) (requiring plausible grounds for inferences if those inferences are to sustain a complaint).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give fair notice of the claim and the grounds upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief,

"raising that possibility above a 'speculative' level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl.*, 127 S. Ct. at 1965, 1973 n.14.

*Bell Atlantic* did not eliminate the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations. *Bell Atl.*, 127 S. Ct. at 1964. It is still true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 127 S. Ct. at 1965. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667. In the context of antitrust litigation, *Bell Atlantic* noted the high cost of discovery and held that a complaint must set forth sufficient facts to show plausible grounds exist for believing a violation has occurred.

### III.  Analysis

In their motion to dismiss, Defendants argue that the Court should dismiss Plaintiffs' complaint because Plaintiffs lack standing and Plaintiffs failed to state claims under the Sherman Act or under Illinois law.

### A.  Lack of Standing

Defendants first argue that Plaintiffs lack standing to bring the claims in Counts I, II, and III because they failed to allege an antitrust injury and they are not appropriate enforcers of the antitrust remedy.

Standing is a threshold issue that courts must address before they can exercise jurisdiction over the subject matter of a suit. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). The party seeking to invoke federal jurisdiction bears the burden of establishing

3

standing to sue.  *Id*.  When considering a motion to dismiss based on lack of standing, the Court must accept as true all material allegations of the complaint and draw all reasonable inferences in favor of the party who bears the burden of establishing standing.  *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996).

Section 4 of the Clayton Act governs standing to bring an antitrust claim, providing that a private right of action to "any person who shall be injured in his business or his property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a).  The Supreme Court has cautioned that this seemingly broad language must be interpreted narrowly in light of Congressional intent as revealed by the legislative history.  *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 1328 (2007) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529-35 (1983)).  Thus, not all persons who have suffered an injury flowing from an antitrust violation have standing to sue under Section 4.  *Kochert*, 463 F.3d at 716 (quoting *In re Industrial Gas Antitrust Lit.*, 681 F.2d 514, 516 (7th Cir. 1982)).  Under Seventh Circuit precedent, "only those parties who can most efficiently vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action under § 4." *Kochert*, 463 F.3d at 716 (quoting *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 597-98 (7th Cir. 1995)).  A plaintiff must demonstrate that he meets the requirements of both antitrust injury and antitrust standing to succeed on the merits of an antitrust claim under the Sherman Act.  *See Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 404 (7th Cir. 1993) ("a showing of both antitrust injury and antitrust standing are necessary to proceed under § 4").

### 1. Antitrust Injury

Defendants argue that Plaintiffs have failed to allege an antitrust injury; instead, they alleged only injury to themselves as competitors.  *See U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 627 (7th Cir. 2003) ("The antitrust-injury doctrine was created to filter out complaints by

competitors and others who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage.").

The Supreme Court first explained the "antitrust injury" requirement in *Brunswick Corporation v. Pueblo Bowl-O-Mat, Inc.*, where the Court found that plaintiffs seeking to recover damages in a private action against a violator of antitrust laws must demonstrate more than that they are in a worse position than they would have been had the violator not committed the antitrust conduct. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Specifically, the Court stated that private antitrust plaintiffs must prove more than injury causally linked to an illegal presence in the market. *Id.*

> [Antitrust injury is] injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be "the type of loss that the claimed violations . . . would be likely to cause.

*Id.*; *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (stating that a plaintiff can recover on an antitrust claim only where the loss "stems from a competition-reducing aspect or effect of the defendant's behavior"). The Seventh Circuit court has stated that an antitrust injury is a loss that "comes from acts that reduce output or raise prices to consumers." *Chi. Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 670 (7th Cir. 1992).

To support their argument that Plaintiffs' injuries do not constitute "antitrust injuries," Defendants rely on *Kochert* in which the court held that the plaintiff had not suffered an antitrust injury as a result of not being included in an exclusive agreement between the defendant hospital and other anesthesiologists. As Plaintiffs have pointed out, however, the basis for that holding was not that a doctor does not suffer an antitrust injury when he is forced from the market. Instead, the court's holding was based on its finding that Kochert had given up practicing anesthesiology and was practicing pain management full-time as of August 2000, which is the time the court determined the defendants' anticompetitive conduct started. *Kochert*, 463 F.3d at 719. Thus, the court concluded that the anticompetitive behavior did not injure Kochert's anesthesiology practice because that practice was nonexistent by that time. Plaintiffs also

5

contend that "[t]he United States Supreme Court has long recognized that competitors have standing whenever they can show that they are being excluded, whether fully or partially, in ways that harm competition, not just the competitor" (#25, p. 7), citing *Brunswick* in support. *See Brunswick*, 429 U.S. at 489 ("but competitors may be able to prove antitrust injury before they are actually driven from the market, and competition is thereby lessened").

Here, the complaint alleged that Defendants' conduct could "injure the public by limiting or preventing competition" (#20, ¶ 11). Plaintiffs allege generally that Defendants' conduct has (1) diminished competition by eliminating Plaintiffs from the market and as a result, the public has suffered because of the diminished quality of radiological services now available (#20, ¶ 24); and (2) diminished the availability and quality of radiology services to the medical consumer (as a result of Plaintiffs' lost referrals) (#20, ¶ 32). Specifically, Plaintiffs allege as follows:

> [Defendants' attempt to monopolize the practice of radiology,] in addition to damaging the plaintiffs, have and will continue to damage medical consumers in the relevant market by diminishing the quality and availability of radiology services as follows:  (a) preventing plaintiffs from on site radiology services that would provide greater on site coverage and availability for both routine and emergency direct personal fact to fact consultations between treating doctor and/or surgeon with the radiologist; (b) by preventing doctors that are referring radiology cases to the radiologists of their choice which radiologist is selected  by referring M.D. for the quality of the radiologist services and/or good communication and working relationship between referring M.D.; (c) by using a service that does not routinely make itself available for direct consultations between referring doctors and consulting radiologists without additional charges, thereby excluding the alternative competitive service for the medical consumer; and (d) limiting a radiologist that was available on short notice to explain and/or analyze radiographs, CAT scans, and/or MRIs beyond the written interpretation report.

(#20, ¶ 18.)

Plaintiffs have not alleged that prices have increased or availability of services has declined.  Regarding availability, in the context of an antitrust injury, the issue is whether radiology services are available, not whether a particular radiologist provides them.  *See Wagner v. Magellan Health Servs., Inc.*, 121 F. Supp. 2d 673, 682 n.5 (N.D. Ill. 2000) ("Choice of physician should not be a factor . . . .  The issue is whether the services were available, not who

provided them."). Here, the complaint refers to diminishing availability of radiology services in the context of Plaintiffs' lost referrals, stating that "Plaintiffs have lost numerous patients which would have been referred to the Plaintiffs, thereby diminishing the availability . . . of radiology services to the medical consumer" (#20, ¶ 32(a)). The complaint does not allege that Defendants' conduct has resulted in a decline in the availability of radiology services in general, only that Plaintiffs' ability to provide those services has declined. Therefore, Plaintiffs have not alleged an antitrust injury related to availability. Finally, the complaint does not allege that the quality of radiology services has declined. Instead, the allegations relate to the convenience for referring doctors of having a particular radiologist available onsite and on short notice for face-to-face consultations. These purported injuries do not constitute a loss that "stems from a competition-reducing aspect or effect of the defendant's behavior." *Atl. Richfield Co.*, 495 U.S. at 344. At most they allege that referring doctors have less freedom to refer patients to Plaintiffs. *See e.g., Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1559 n.15 (10th Cir. 1991) (holding that physician's suspension did not have an actual detrimental effect on competition because it did not result in restriction of choice to consumers). Accordingly, the Court concludes that Plaintiffs' allegations of injury do not constitute "antitrust injuries."

## 2. Efficient Enforcer

Defendants next argue that Plaintiffs lack standing because they are not the "parties who can most efficiently vindicate the purposes of the antitrust laws." *Kochert*, 463 F.3d at 718 (quoting *Serfecz,* 67 F.3d at 598).

The Supreme Court has identified six factors that courts should weigh in making this assessment, as follows: (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness between the injury and the market restraint; (5) the speculative nature of the damages; and (6) the risk of duplicate recoveries or

complex damages apportionment. *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 927 (7th Cir. 1995) (describing factors articulated in *Associated Gen. Contractors,* 459 U.S. at 537-46). Neither party uses these factors in their analysis.

Defendants cite two cases in support of their argument that Plaintiffs are not the most efficient enforcers in this case. In *Kochert*, the court stated that "consumers, or perhaps one of the entities that is also directly affected by rises in anesthesia services prices, such as an insurer, would be a more efficient claimant" and concluded that "[i]f [the defendants] are truly manipulating the anesthesia services market in order to raise prices and drive down quality of care, these effects will not be missed by patient-consumers or insurers." *Kochert*, 463 F.3d at 718-19, 719. In *Todorov, M.D. v. DCH Healthcare Authority*, the Eleventh Circuit court affirmed summary judgment against a doctor who had not even argued that the alleged anticompetitive conduct hurt competition or increased prices, stating as follows:

> Dr. Todorov is simply looking to increase his profits, like any competitor. As such, Dr. Todorov is a particularly poor representative of the patients; indeed, his interests in this case are so at odds with the patients' interests that it is unlikely that he would have standing under article III to present their claims. Dr. Todorov is thus no champion for the cause of consumers. If the radiologists or DCH are acting anticompetitively and are charging an inflated price, then the patients, their insurers, or the government, all of whom are interested in ensuring that consumers pay a competitive price, may bring an action to enjoin such practice.

*Todorov, M.D. v. DCH Healthcare Auth.*, 921 F.2d 1438, 1455 (11th Cir. 1991). In *Todorov*, the court concluded that the plaintiff did not satisfy either the antitrust injury or the efficient enforcer element of antitrust standing. Because *Todorov* is a summary judgment case and the evidence in that case is very different from Plaintiffs' allegations in this case, *Todorov* is not helpful.

Plaintiffs distinguish their situation from the one in *Kochert* by pointing out that the causal connection between the plaintiff's injury and the antitrust violation in *Kochert* was tenuous; in fact, the court determined that the plaintiff had not suffered an antitrust injury because she had already ceased providing anesthesia services at the time of the alleged anticompetitive conduct. Plaintiffs also argue that the Supreme Court recognized in *Brunswick* that competitors have standing whenever they can show that they are being excluded in ways

that harm competition, not just the competitor. Plaintiffs cite *Associated General Contractors* for the statement that if defendants have injured competitors, their injuries are direct and the competitors have a right to maintain a suit for treble damages against defendants. In that case, a union sued the defendants and the Supreme Court stated that "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party, such as the union, to perform the office of private attorney general." *Associated Gen. Contractors*, 459 U.S. at 542.

Finally, Plaintiffs also cited the Third Circuit court's decision in *Angelico v. Lehigh Valley Hospital, Inc.*, as support for their argument that they are efficient enforcers. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F3d 268 (3d Cir. 1999). In that case, the court specifically held that a physician who had been denied surgical privileges at hospitals had standing as an efficient enforcer. The court looked at the factors and determined that the physician satisfied the factors of a direct injury resulting from the alleged conspiracy because, in that case, the harm to consumers was less direct and arose from higher cost or poorer treatment that would result from the removal of a strong competitor from the market. The court also stated that consumers would be highly unlikely to sue for a loss of this type and there was no potential for duplicative recovery. *Id.*, 184 F.3d at 275.

As noted above, Plaintiffs have not alleged increased price, decreased availability, or decreased quality of radiology services as a result of Defendants' conduct. Instead, Plaintiff Lindberg alleges losses related to the decline of his radiology practice. Those losses are personal and do not constitute antitrust injuries. Therefore, they are not the type of injury that Congress sought to redress with antitrust laws. In addition, Plaintiffs' lost income from lost referrals is speculative and would be difficult to determine. (*See Web Commc'ns Group, Inc. v. Gateway 2000, Inc*., No. 93 C 6821, 1995 WL 23535, *3 (N.D. Ill., Jan. 17, 1995) ("Illinois courts acknowledge that damages based upon referral business are both inherently speculative and impossible to measure.") (citing *Burt Dickens & Co. v. Bodi,* 494 N.E.2d 817, 823 (1st App. Ct. 1986)). Finally, the complaint alleges that, as a result of Defendants' anticompetitive conduct,

9

referring doctors have less freedom to have personal consultations with Plaintiff, they cannot refer radiology cases to Plaintiffs, and because they cannot refer to Plaintiffs, they have to use a service "that does not routinely make itself available for direct consultations" between themselves (the referring doctors) and radiologists (#20, ¶ 18).  Based on these allegations, the anticompetitive effect, if any, on Plaintiffs is very indirect.

The Supreme Court stated that "[t]he existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement diminishes the justification for allowing a more remote party . . . to perform the office of a private attorney general." *Associated Gen. Contractors*, 459 U.S. at 542.  Here, based on the complaint, the referring doctors are most directly affected by the purported anticompetitive effect of Defendants' conduct.  Accordingly, based on the Seventh Circuit case law regarding the "efficient enforcer" requirement, the Court concludes that Plaintiffs are not the proper parties to bring these claims.

Because Plaintiffs are not the proper parties to bring these claims and because Plaintiffs have failed to allege antitrust injury, the Court recommends dismissing the antitrust claims in Counts I, II, and III.

**B.  Failure To State a Claim**

Defendants also argue that the Court should dismiss Plaintiffs' claims for failure to state claims.  Because the Court has recommending dismissing the antitrust claims based on failure to allege antitrust injury and antitrust standing, the Court need not address Defendants' arguments regarding Plaintiffs' failure to state antitrust claims.  The only claim remaining is Plaintiffs' claim that Defendants tortiously interfered with business relations.

Generally, when all federal claims are dismissed before trial, claims based on state law should be left to the state courts.  *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).  The Court has concluded that it has no jurisdiction over the antitrust claims, and it recommends declining to exercise supplemental jurisdiction over the remaining state law

claim.  *See* 28 U.S.C. § 1367(c)(3).  Thus, the Court recommends dismissing the claim in Count IV.

### IV.  Summary

For the reasons stated above, this Court recommends that Defendants' Motion To Dismiss Plaintiffs' Amended Complaint and for Judicial Notice **(#21)** be **GRANTED** without prejudice to filing in state court.  The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 27th day of May, 2008.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE